ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KEVIN YEH (CABN 314079)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
(415) 436-7063
kevin.yeh@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>EDUARDO BERMUDEZ GOMEZ,<br><br>Defendant. | CASE NO. 3:20-CR-00382-WHO<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: August 15, 2024<br>Time: 1:30 p.m.<br>Courtroom: No. 2, 17th Floor<br>Judge: Hon. William H. Orrick |

## INTRODUCTION

Eduardo Bermudez Gomez has had many chances, and he squandered them. He has accrued 10 convictions for various offenses over an approximately 17 year period, but rather than take any one of these as a wake-up call, he continued to re-offend, and virtually each of his offenses was committed during a probationary period. Pretrial Services has also filed four violation notices in this case.

The Court is well-aware of the shocking offense conduct in this matter: Gomez was drunkenly driving, fled from an officer pursuing him, brandished a gun at two different victims, and crashed into multiple parked vehicles before flipping over his own truck. Because he had two felony convictions at the time, he was charged with illegally possessing a firearm. What is more shocking than the offense

conduct, however, is that Gomez again got drunk and drove, hitting another car and causing a three-car pile-up *after he had pleaded guilty in this case* and was in this Court's Conviction Alternatives Program.

Gomez clearly needed addiction treatment, which he has since received. But that does not excuse how cavalierly he has treated the lives of others—because he was not just drinking, nor was he "just" drinking and driving. Rather, he drank and he drove *while armed with a gun*, which he brandished twice. And then he drank and drove *again* after purporting to accept responsibility for what he did before. It is only through good fortune that no one has been physically hurt or killed. Gomez must answer for his conduct and must also serve as an example to others who similarly do not take seriously the physical safety and wellbeing of the community.

Gomez has pleaded open to the sole count in the information: being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The parties and Probation agree that his offense level is 23. At sentencing, his Criminal History Category will likely be IV, resulting in a Guidelines range of 70–87 months. For the reasons herein, and considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Gomez to a below-Guidelines term of imprisonment of 35 months; 3 years of supervised release; forfeiture; and a special assessment of $100.

## DISCUSSION

### I. Factual History

#### A. The Charged Offense

On February 1, 2020, Eduardo Bermudez Gomez—an admitted Sureño gang member—was reportedly drunk driving and had driven his Dodge Ram truck onto a sidewalk, exited his vehicle, and began yelling. PSR ¶ 9. A responding officer saw Gomez's truck abruptly stop in an intersection, quickly turn left and make a U-turn (after having some trouble shifting gears), and then drive off at nearly twice the speed limit. *Id.* ¶¶ 10–11.

When the officer activated his overhead lights to initiate a stop, Gomez fled and tried to U-turn by driving onto the sidewalk and then accelerated away. The officer later found Gomez's truck overturned on the road, along with several damaged parked cars Gomez had hit, ranging from moderately to severely damaged, including one that was "totaled." *Id.* ¶ 12.

Gomez, who climbed out of the truck, smelled of alcohol and told the officer he was "fucked

up." *Id.* He then lied to the officer about not having a gun, though officers later found an unloaded one in his pants. *Id.* The gun was reported stolen by LAPD. *Id.* A bullet and a small plastic bag of cocaine were also found on Gomez. *Id.* ¶ 13. Another handgun—this one loaded with a single bullet and with an obliterated serial number—was found directly under Gomez's overturned truck. *Id.* ¶ 14.

One witness reported that Gomez's truck passed him on the road as they were driving and suddenly stopped in front of him, then Gomez exited his truck holding a small handgun. *Id.* ¶ 15. Fearing for his life, the witness quickly drove away. *Id.* Another witness reported that Gomez tried to run her off the road and had brandished a firearm. *Id.*

At the time of the offense, Gomez had two felony convictions. *Id.* ¶ 17. He has approximately seven other misdemeanor convictions as an adult, including relating to this offense. *Id.* ¶¶ 35–43. For seven of his nine convictions, he committed the particular offense conduct while on probation for a prior offense. *Id.*

**B. January 2023 Drunk Driving Incident**

After Gomez pleaded guilty in this matter, was on state probation, and had been participating in CAP for nearly six months, he again drove while drunk. Gomez drove at high speed and made an unsafe turn. He then hit the rear of a car, causing that car to collide with a second car, which in turn caused the second car to crash into a third car. Gomez then fled from the scene.

An officer responding to a report that a car had crashed into a house found Gomez stumbling down the street. The officer tried multiple times to get Gomez to stop, but Gomez kept going. The officer arrested Gomez, who had abrasions on his forehead and appeared to have suffered a head injury (later determined to be a skull fracture), and an ambulance picked him up. While in the ambulance, Gomez pushed medical personnel away and tried to get off the gurney, and had to be handcuffed to the gurney with the officer alongside him on the way to the hospital.

Gomez's BAC was nearly three times the legal limit. *Id.* ¶ 43.

**II. Procedural History**

On September 8, 2020, the government filed a complaint charging Gomez with being a felon in possession of a firearm. Dkt. No. 1.

On September 29, 2020, the Honorable Donna Ryu released Gomez on bond. Dkt. No. 10.

On October 9, 2020, the government filed an information charging Gomez with one count of violating 18 U.S.C. § 922(g)(1)—felon in possession of a firearm. Dkt. No. 15. On December 4, 2024, the government filed an amended information with the same charge. Dkt. No. 26.

On April 2, 2021, Gomez pleaded open to the sole count in the amended information. Dkt. No. 44.

On August 6, 2021, Pretrial Services filed a violation notice due to Gomez's submitting two urine samples for drug testing which appeared to be diluted—on June 22, 2021, and July 27, 2021. Dkt. No. 53. (The notice reflected that Gomez's therapists believed that the samples may have been diluted due to water intake and that he seemed serious about sobriety. *Id.*)

On August 13, 2021, the Honorable Susan Illston referred Gomez to the Alternatives to Incarceration Program for evaluation as to whether he may be admitted. Dkt. No. 61. On August 19, 2021, Gomez was admitted to the Conviction Alternatives Program, and this case was reassigned to the Honorable William H. Orrick. Dkt. Nos. 83, 84.

On April 18, 2022, Pretrial Services filed a violation notice due to Gomez's testing positive for cocaine on March 15, 2022, and failing to report to Pretrial Services as required. Dkt. No. 76.

On August 3, 2022, Gomez began participating in the Conviction Alternatives Program. PSR ¶ 6. After being arrested and charged state-side with driving under the influence and hit-and-run in January 2023, Gomez was terminated from CAP. *Id.*

On October 11, 2023, Pretrial Services filed a violation notice due to Gomez's failure to report for drug testing on August 28, 2023. Dkt. No. 91.

On February 23, 2024, Pretrial Services filed a violation notice due to Gomez's submitting a urine sample for drug testing which appeared to be diluted. Dkt. No. 95.

Sentencing is set for August 15, 2024, before this Court. Dkt. No. 98.

**III. Sentencing Guidelines Calculation**

The parties and Probation agree that the Guidelines calculation is as follows:

a. Base Offense Level, U.S.S.G. § 2K2.1(a)(4)(A): 20

b. Specific Offense Characteristic, § 2K2.1(b)(4)(B)—firearm with obliterated serial number: +4

c. Adjustment, § 3C1.2—creating substantial risk of death or serious bodily injury during flight from law enforcement: +2

d. Acceptance of Responsibility: -3

e. Adjusted Offense Level: **23**

As noted in the PSR, while Gomez's CHC is currently III, *see* PSR ¶ 46, if he is sentenced on August 12 in Napa County Superior Court to a 180-day term of imprisonment as a result of his plea resolution for the January 2023 drunk-driving incident, as is anticipated, his CHC will increase to IV. PSR ¶¶ 43 n.1, 44 n.2 & 46 n.3.

Offense Level 23 at CHC IV yields a Guidelines range of **70 to 87 months**.

## IV. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should first calculate the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id.* at 991–93.

In arriving at the appropriate sentence, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

//

//

## V. Recommended Sentence and Section 3553(a) Factors

### A. Probation's Recommendation

Probation has recommended that Gomez be sentenced to a term of imprisonment of 12 months and a day, supervised release of 3 years, and a special assessment of $100.

### B. Government's Recommendation

The government respectfully submits that a below-Guidelines sentence of 35 months is sufficient, but not greater than necessary, to vindicate the considerations behind Section 3553(a). Here, a sentence of 35 months appropriately balances the Section 3553(a) factors, recognizing the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence, as well as taking into account the history and characteristics of the defendant, as described in the Presentence Investigation Report.

Gomez undoubtedly had a challenging upbringing, and appears to have fallen into the wrong crowd when he joined the notorious Sureño gang. He began committing crimes as early as age 14, and continued for 17 years—including after he pleaded guilty to the instant offense. He has accumulated about ten convictions, and was placed on probation virtually every time. Rather than take each offense as a chance to reform and improve himself, Gomez continued on his deleterious path, harming not only himself but—more concerningly—also posing a grave danger to the community.

In this case, Gomez drank until his blood alcohol content was nearly twice the legal limit, then climbed into his Dodge Ram truck and began recklessly driving. He reportedly tried to run one woman off the road and brandished a gun. He also pulled his truck in front of another driver, stopped, got out, and was holding his gun, causing the victim to fear for his life. When an officer tried to stop Gomez, he sped away at nearly twice the speed limit, conducted dangerous U-turns, and drove onto the sidewalk. The officer was unable to catch up to Gomez, but eventually found his car flipped over, leaving a trail of damaged cars, including one that was "totaled." Gomez (a felon) then lied about not having a gun because one was found on him, and a second loaded gun was found in the debris of his overturned truck.

Notwithstanding the horrific nature of Gomez's offense, the Honorable Donna Ryu took a chance on Gomez and granted him pretrial release over the government's objection. But even *after* Gomez entered a guilty plea, he accumulated no less than four pretrial violation notices, including three

instances of providing diluted urine samples for drug testing, missing a drug test, and testing positive for cocaine. Judge Ryu and the Honorable Alex Tse gave Gomez additional chances and did not sanction him for any violation.

The Honorable Susan Illston, too, took a chance on Gomez and referred him to the Alternatives to Conviction Program for evaluation, and he began participating in the Conviction Alternatives Program. Notwithstanding yet another opportunity to turn his life around, Gomez again drank to excess—nearly *three* times the legal limit, i.e., a higher BAC than in the instant offense—and caused three other cars on the road to crash before attempting to flee from the scene.

It appears that Gomez suffers from addiction, and his statements to Probation evince remorse. PSR ¶ 21. The government hopes that Gomez can achieve sustained sobriety. Nevertheless, the societal goals of specific and general deterrence must be served. To date, Gomez does not appear to recognize that his poor decisions affect not only himself, but pose a real, deadly danger to the community. Luck is the only reason Gomez has not seriously injured anyone despite driving into and severely damaging multiple cars, and causing a three-car pile-up, or that he did not drunkenly shoot someone. He—and others like him—must know that such reckless indifference to others' physical safety and well-being has consequences.

A term of imprisonment is appropriate here. The government has considered the fact that Gomez appears to have gainful employment, has children, and enjoys the support of his partner. None of this erases his alarming conduct and repeat offenses, however, nor does any of it obviate the need for specific and general deterrence. Thus, the government recommends that Gomez be sentenced to a below-Guidelines term of imprisonment of 35 months.

**CONCLUSION**

In full consideration of the goals of sentencing and for the reasons stated herein, the government respectfully recommends that the Court sentence Gomez to a below-Guidelines term of imprisonment of 35 months. Such a sentence is sufficient, but not greater than necessary, to vindicate the goals of Section 3553(a). The government also respectfully requests that the Court sentence Gomez to a 3-year term of supervised release; forfeiture; and a special assessment of $100.

DATED: August 8, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
KEVIN YEH
Assistant United States Attorney